**In re ADOPTION OF HEDRICK.**

[Cite as *In re Adoption of Hedrick* (1996), 110 Ohio App.3d 622.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68882.

Decided April 29, 1996.

*Legal Aid Society of Cleveland, David B. Dawson, Gusty A. Rini* and *Dennis B. Pollard,* for guardian-appellant Merle M. Cutright, Jr.

*Lee R. Kravitz,* for appellee Ricky Allen Hedrick.

---

PATRICIA ANN BLACKMON, Judge.

Appellant, Merle Melvin Cutright, Jr., appeals the judgment of the trial court granting the petition of appellee, Ricky Allen Hedrick, for the adoption of Justin James Hedrick and assigns the following errors for our review:

"I. By finding that appellee took no 'active' steps to prevent communication, the trial court erred by applying the wrong legal standard to the issue of justifiable cause.

"II. The trial court erred by shifting the burden of proving no justifiable cause from appellee to appellant.

"III. Appellee failed to prove by clear and convincing evidence that there was no justifiable cause for appellant's failure to communicate with his son.

"IV. The trial court erred by ruling that appellant's attempt to communicate did not constitute a communication where appellant was incarcerated and had no other way of communicating other than through his mother.

"V. The trial court erred by refusing to dismiss the adoption petition for want of a necessary consent."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm the decision of the trial court. The apposite facts follow.

Denise Ann Hedrick, f.k.a. Denise Ann Drdek, gave birth to Justin James on November 15, 1989. His natural father is Merle Cutright, Jr. In June 1990, Denise and Merle separated after living together for six months. The separation was because of Merle's behavior, which created a bad environment for their son. Denise and Justin moved in with her parents. Merle visited his son once after the separation in February 1990 and provided a total of $75 in support for his son during that year. Denise Hedrick has cared for her son since his birth.

Merle Cutright was incarcerated on September 30, 1991.

In April 1991, Denise and Ricky Hedrick were engaged to be married, and Denise, Ricky and Justin began living together. Denise and Ricky Hedrick were married in May 1992. After Denise moved she did not want Merle Cutright to know where she lived, but permitted his mother, Betty Cutright, to visit her grandson, Justin.

Ricky Hedrick filed his petition to adopt Justin on October 12, 1993.

In May 1994, Betty Cutright gave Denise Hedrick a letter from Merle to be given to his son. The date of the letter was June 2, 1993. Betty Cutright testified that her son, Merle, sent Justin two birthday cards while he was in prison and wrote letters to his son, which Merle mailed to her. Betty Cutright did not forward the letters to Denise Hedrick because she was afraid Denise would prohibit her from seeing her grandson. The only letter delivered was the one given to Denise in May 1994.

The trial court conducted a hearing to determine whether Merle Cutright's consent to the adoption was required. After the testimony of Ricky and Denise

Hedrick, the trial court stated, "It is my belief that the communication leg of the statute 3107.07 has not been refuted by Mr. Rini [Merle Cutright's counsel]. I believe that you have shown by clear and convincing evidence both of those, and the burden then switches to him—that is, to him being Mr. Rini—and the natural father." At the conclusion of the hearing, the trial court found that Merle Cutright, the natural father, had not communicated for one year prior to the filing of the adoption proceeding. Therefore, the trial court held that Cutright's consent to the adoption was not required, and the petition for adoption was granted. This appeal followed.

In his first and second assignments of error, Cutright argues that the trial court erred by applying the wrong legal standards when it determined that his consent to the adoption of his son was not required under R.C. 3107.07(A).

R.C. 3107.07 provides:

"Consent to adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner * * *."

Cutright asserts that the trial court applied the wrong legal standard to the issue of justifiable cause by failing to recognize that Denise Hedrick engaged in what he called "inactive interference and discouragement." The standard of proof to establish justifiable cause for the noncustodial parent's failure to communicate with the child is "significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication." *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 367–368, 18 OBR 419, 425, 481 N.E.2d 613, 620. In this case, there is no indication in the record that the trial court failed to apply this standard to the facts of this case.

Cutright also asserts that the trial court erred in shifting the burden of proof to him as the noncustodial parent. The party petitioning for adoption has the burden of proving by clear and convincing evidence that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication. *Id.* at 368, 18 OBR at 425–426, 481 N.E.2d at 620–621. "No burden is placed upon the non-consenting parent to prove that his failure to communicate was justifiable." *Id.*

■ There can be no dispute that the trial judge in this case improperly stated that "the burden switches to * * * the natural father," after the petitioner

proved by clear and convincing evidence a lack of communication without justifiable cause. However, the trial judge's comment was not prejudicial; Hedrick was afforded the opportunity to present evidence and argue the proper burden of proof at the close of all evidence. Because Cutright was provided a full and fair hearing, and the trial judge as trier of fact had sufficient evidence to satisfy Ricky Hedrick's burden of proof, the trial judge's comment was harmless error.

In his third and fourth assignments of error, Cutright raises the two most critical issues in this case: whether Ricky Hedrick proved by clear and convincing evidence that Merle Cutright did not communicate with his child for the requisite one year and whether he lacked justifiable cause for not doing so. "[I]ssues regarding failure of communication and lack of justifiable cause are questions of fact for the probate court." *In re Adoption of Holcomb*, 18 Ohio St.3d at 368, 18 OBR at 425–426, 481 N.E.2d at 621. "Once the clear and convincing standard has been met to the satisfaction of the probate court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof." *Id.* Clear and convincing evidence requires proof that would " 'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id.*, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus. Thus, the probate court's determination should not be reversed unless it is not supported by clear and convincing evidence.

 Cutright asserts that his attempts to communicate with his son by sending letters and birthday cards constituted communications. For purposes of R.C. 3107.07(A), the term "communicate" must be given its ordinary and accepted meaning. *In re Adoption of Jordan* (1991), 72 Ohio App.3d 638, 644, 595 N.E.2d 963, 967 (wave or smile from across a room not a communication). "Communicate" has been defined as " 'to make known,' 'to inform a person of, convey the knowledge or information of * * * to send information or messages * * *.' " *Id.* at 644, 595 N.E.2d at 967, quoting Webster's Third New International Dictionary (1986) 460. "The essence of communication is the passing of a thought from the mind of one person to the mind of another." *Jordan* at 644, 595 N.E.2d at 967. A message not received or successfully passed to the mind of another is not communicated, nor does an unsuccessful attempt to communicate constitute communication. See *In re Adoption of Bradford* (1985), 18 Ohio St.3d 361, 369–370, 18 OBR 419, 426–427, 481 N.E.2d 613, 621–622 (where father made one unsuccessful attempt to communicate but was turned away having arrived at the mother's house without advance notice or prior arrangements).

 One father who sent birthday cards to his daughters did not fail to communicate because the birthday cards were actually received and read by the

girls. See *In re Adoption of Knisley* (Aug. 17, 1983), Fayette App. No. 82–CA–23, unreported, 1983 WL 4443. However, the letters and cards sent by Merle Cutright were never received and never read. Furthermore, Denise and Ricky Hedrick testified that Cutright never had any communication with his son during the one-year period before Ricky Hedrick filed for adoption. Therefore, Cutright's attempts to communicate with his son were not communications, and there was clear and convincing evidence that he never communicated with his son.

Cutright also asserts that there was justifiable cause for his failure to communicate with his son. As previously stated in this opinion, the petitioner must prove a lack of significant interference by a custodial parent with communication between the noncustodial parent and the child, or a lack of significant discouragement of such communication. "In examining whether the parent's failure was justified, the court is not restricted to focusing only on events occurring during the statutory one-year period. The court must also examine preceding events having any bearing on the parent's failure to communicate with his child." *In re Adoption of Lauck* (1992), 82 Ohio App.3d 348, 353, 612 N.E.2d 459, 462.

In this case, Merle Cutright argues that Denise Hedrick significantly discouraged him from communicating with his son. Betty Cutright believed that Hedrick created a "hostile environment" by making it clear that she did not want Merle to have her address. She, therefore, claims that she did not forward the letters and cards for fear that Denise would prohibit her from visiting her grandson. Denise, however, claims that safety, not discouraging Merle Cutright, was her intention. Thus, this issue raises a question of credibility, which was properly decided by the trial court in favor of Denise. *Holcomb*, 18 Ohio St.3d at 368, 18 OBR at 425–426, 481 N.E.2d at 620–621. Moreover, there was no evidence that Denise did anything to discourage other means of communication that did not involve Merle knowing where she lived.

Merle Cutright also argues that Denise Hedrick significantly interfered with his attempts to communicate. Denise permitted Merle's mother, Betty Cutright, to visit Justin. Merle sent letters and cards to his mother to be forwarded to his son, but his mother did not forward them for fear that her contact with her grandchild would be cut off by Denise. Although Denise was adamant about Merle not knowing where she lived, that decision did not interfere with Merle's means of communication. Denise could not interfere because she did not know about the letters and was not in a position to interfere.

These facts are unique inasmuch as it was the actions of a third party which significantly interfered with the noncustodial parent's attempts to communicate. The law, however, requires only clear and convincing evidence that the custodial

parent did not significantly interfere or discourage such communications. Thus, a third party's interference is not a justifiable cause for the noncustodial parent's failure to communicate with his or her child.

This court, therefore, concludes that the trial court's judgment was supported by clear and convincing evidence that Merle Cutright failed to communicate with his son and lacked justifiable cause for not doing so. Accordingly, Cutright's consent to the adoption was not required under the circumstances as set forth in R.C. 3107.07(A).

In his fifth assignment of error, Cutright argues that the trial court erred in ordering the adoption without his consent. Because this court concludes that his consent was not required, this argument has no merit.

*Judgment affirmed.*

MATIA and PATTON, JJ., concur.