OPINION
{¶ 1} Respondent-appellant Nicholas A. Myer ("father") appeals the January 10, 2005 Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Probate Division, finding father's consent to the step parent adoption of his minor son, Gavin, was not necessary because he failed without justifiable cause to support the boy for a period of at least one year immediately proceeding the filing of the adoption petition. Petitioner-appellee is Robert Gorski, the stepfather of Gavin.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 19, 2004, appellee filed a Step-Parent Adoption Petition in the Stark County Court of Common Pleas, Probate Division, seeking to adopt his stepson, Gavin A. Weaver. Appellee averred father's consent to the adoption was not required as father failed without justifiable cause to provide for the maintenance and support of Gavin for a period of at least one year immediately proceeding the filing of the adoption petition. The trial court scheduled the matter for evidentiary hearing on September 27, 2004. At father's request, the trial court continued the hearing until November 1, 2004.
 {¶ 3} Gavin was born on January 18, 2000, to father and Elizabeth Ann Weaver ("mother"). Subsequent to Gavin's birth, father instituted an action in the Stark County Court of Common Pleas, Juvenile Division, seeking a support order and visitation with Gavin. On June 12, 2000, father and mother were married and the existing support order was vacated. Mother and father were divorced via Decree issued by the Muskingum County Court of Common Pleas, Domestic Relations Division, filed on March 15, 2002. Mother, and Thomas and Pamela Myer, parents of father, were named residential parents and legal custodians of Gavin through a shared parenting plan.[1] The parties agreed no support would be due from the other at that time. The agreement was incorporated into the divorce decree.
 {¶ 4} Appellee and mother were married on September 3, 2003. On October 21, 2003, father fathered another son with a different woman, to whom he is not married. Father currently pays support on a voluntary basis for that child. Via Agreed Judgment Entry filed October 24, 2003, the Muskingum County Court of Common Pleas, Domestic Relations Division, terminated the shared parenting plan between mother and Pamela Myer. This judgment entry designated mother as the sole residential parent and legal custodian of Gavin with Pamela Myer substituted as the nonresidential parent. Pamela Myer was granted visitation every other weekend and continues the prior visitation rights of father with the ongoing requirement his visits be coordinated and supervised by Pamela Myer. The October 24, 2003 Agreed Entry did not address the issue of support.
 {¶ 5} Except for a period of one month, father was employed for the entire year between February, 2003, and February, 2004. Father has purchased clothing, toys, videogames, and food for Gavin when they are together. Father presented the trial court with photographs of the purchases he has made for Gavin. Father did not provide the trial court with receipts for these items. Father currently resides with Pamela Myer. He does not pay rent to Pamela Myer, however, he assists with household chores and maintenance. When asked why he had not gone to the Child Support Enforcement Agency and pay child support, father replied "To the best of my knowledge under the shared parenting agreement that wasn't really required of me all that was required of me was to share the expenses that were [needed] to raise Gavin. Which I have done so." Tr. at 28. Father repeatedly stated no child support was ever requested of him, but "[If mother] would request child support I would gladly pay it. But she didn't, so therefore * * * I felt like she didn't want anything from me." Tr. at 29. Father testified mother had never presented him with any medical or school bills for Gavin. In fact, father stated mother had not spoken to him for at least two years. Gavin's medical expenses are paid through Medicaid.
 {¶ 6} Pamela Myer testified, pursuant to the October 24, 2003 Agreed Judgment Entry, she is required to be present for, and personally supervise, any and all visitation exercised by father with Gavin. Pamela Myer attested father did in fact buy the items he stated he had purchased. Pamela conceded she had purchased food and clothing for Gavin as a grandmother is likely to do.
 {¶ 7} After hearing all the evidence, the trial court ordered the parties to submit proposed findings of fact and conclusions of law. Thereafter, on January 10, 2005, the trial court issued its own Findings of Fact and Conclusions of Law, ruling father's consent was not necessary because the support provided by father was "very limited" and "duplicative" as mother could have sent clothing with the boy during his visits, with father and Pamela Myer.
 {¶ 8} It is from those findings and conclusions father appeals, raising as his sole assignment of error:
 {¶ 9} "I. The trial court erroneously found that the biological father, without justification, failed to support gavin a. myer for more than one year preceding the filing of a step-parent petition for adoption and that his consent to adopt was not necessary."
 I {¶ 10} In his first assignment of error, father maintains the trial court erred in finding his consent was not necessary for the adoption.
 {¶ 11} R.C. 3107.07 reads, in pertinent part:
 {¶ 12} "Consent to adoption is not required of any of the following: (A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."
 {¶ 13} Pursuant to this statute, a petitioner for adoption has the burden of proving, by clear and convincing evidence, both (1) the natural parent failed to either support or communicate with the child for the requisite one-year period, and (2) that this failure was without justifiable cause. In re Adoption of Bovett (1987), 33 Ohio St.3d 102, syllabus para. 1; In re Adoption of Masa (1986), 23 Ohio St.3d 163, syllabus para 1. A probate court's determination under R.C. 3107.07(A) will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. Bovett at syllabus para. 4; Masa at syllabus para. 2. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E.Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279.
 {¶ 14} The relationship between a parent and child is a constitutionally protected liberty interest. See, In re Adoption ofZschach (1996), 75 Ohio St.3d 648. Therefore, any exception to the parental consent requirement for adoption "must be strictly construed so as to protect the right of natural parents to raise and nurture their children." In re Adoption of Schoeppner (1976), 46 Ohio St.2d 21, 24. The relevant inquiry is not whether the parent provided support as would be expected, "but whether the parent's failure to support * * * is of such magnitude as to be the equivalent of abandonment." Celestino v.Schneider (1992), 84 Ohio App.3d 192, 196. For such reason, Ohio courts have held even minimal contributions toward the support of a child meet the maintenance and support requirements of R.C. 3107.07(A) and preserve the natural parent's consent as a jurisdictional prerequisite to a child's adoption. In Re Adoption of McNutt (1999), 134 Ohio App.3d 822.
 {¶ 15} Appellate courts have found even a "meager" amount of support is sufficient to avoid a finding the parent's consent is not required. See, Celestino, supra at 197 (father's payment of $36 to CSEA precluded a finding of failure to provide maintenance and support); Vecchi v. Thomas
(1990), 67 Ohio App.3d 688, 691 (father's payment of $130 to CSEA precluded a finding of failure to provide maintenance and support). At least two appellate districts have held a natural parent who provides for the child's needs during visitation has given sufficient support to avoid the operation of R.C. 3107.07(A). In re Adoption of Huffman (Aug. 29, 1986), Mercer App. No. 10-85-4, unreported; In re Adoption of Pinkava
(Jan. 13, 1989), Lucas App. L-88-034, unreported; contra Dea, supra.
 {¶ 16} Conversely, contributions which are of no value to the child generally do not qualify as maintenance and support. For example, where the natural father places the child on his health insurance plan, but does not inform the custodial parent of the coverage, the contribution does not constitute maintenance and support. In re Adoption of Knight
(1994), 97 Ohio App.3d 670, 672; In re Adoption of Strawser (1987),36 Ohio App.3d 232. Likewise, when the child possesses sufficient clothes and toys, the natural father's purchase of clothing and toys may not be sufficient to preserve the father's right to prevent an adoption.Id. at 234. Nor will gifts to the child qualify as support. Id.; In reAdoption of McCarthy (Jan. 17, 1992), Lucas App. No. L-91-199, unreported (where father gave $14 directly to his son, money constituted gift, not maintenance and support). Finally, several appellate courts have held a natural parent cannot thwart the operation of R.C. 3107.07(A) merely by making one or two token support payments. In re Adoption of Wagner
(1997), 117 Ohio App.3d 448, 454 (father's payment of less than three percent of his income was sufficient to establish failure to provide maintenance and support); Knight, supra at 672 (single payment of $20 was sufficient to establish failure to provide maintenance and support).
 {¶ 17} R.C. 3107.07 does not modify or define the terms "maintenance" or "support." The General Assembly chose not to modify the terms with words such as substantially or "regularly," indicating an intention by the General Assembly to adopt an objective test for analyzing a parent's failure to support. In re: Adoption of Holcomb (1985), 18 Ohio St.3d 361,366. Looking at father's action objectively and construing R.C. 3107.07
strictly in his favor, we find the trial court erred in finding his limited support of Gavin to be tantamount to a failure to support. Father sees the child every other weekend, providing him with food, clothing, and toys. Although father concedes he did not pay any support through the Child Support Enforcement Agency during the one year proceeding appellee's filing of the adoption petition, we find that fact alone is not of such magnitude as to be the equivalent of abandonment. Celestino,
supra.
 {¶ 18} Father's sole assignment of error is sustained.
 {¶ 19} The judgment of the Stark County Court of Common Pleas, Probate Division, is reversed. Costs assessed to appellee.
Hoffman, J., Boggins, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Probate Division, is reversed. Costs assessed to appellee.
[1] Thomas Myer passed away in June, 2003.