OPINION
{¶ 1} Appellant, M.S. ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, Probate Division, in which that court determined that appellant's consent to the adoption of his minor sons by the boys' stepfather is not required because appellant failed, without justifiable cause, to provide for the maintenance and support of the boys during the year immediately preceding the filing of the adoption petition. *Page 2 
 {¶ 2} The relevant factual and procedural history follows. Appellant was once married to R.T., and two children were born of the marriage, B.M.S., born May 30, 1999, and J.C.S., born July 18, 2001. Appellant and R.T. divorced in the state of Oklahoma on March 4, 2002. Pursuant to the decree of divorce, custody of the children was granted to R.T., and appellant was granted visitation privileges and ordered to pay child support. Following the divorce, appellant relocated to Louisiana to attend college and live with his parents. In early 2003, appellant moved to Dallas, Texas. From the time he moved from Oklahoma until early 2005, appellant drove to Oklahoma twice per month to visit with his children. From March 2002 to February 2005, appellant met all of his court-ordered child support obligations.
 {¶ 3} In early 2005, R.T. relocated to Ohio with the children and she married appellee, ST. ("appellee"). From February 2005 through the date of the hearing, appellant has made no court-ordered child support payments. On June 13, 2006, the Oklahoma domestic court granted R.T.'s motion to reduce to judgment appellant's unpaid child support and medical expense obligations, and granted judgment in favor of R.T. and against appellant in the amount of $23,545.02 plus statutory interest.
 {¶ 4} Meanwhile, on April 6, 2006, appellee filed a Step-Parent Petition for Adoption in the Franklin County Probate Court ("probate court"). Therein, appellee alleged that appellant had failed to support the minor children for the immediately preceding 12 months and, consequently, appellant's consent to the adoption was not required. R.T. signed and filed her consent to the adoption. On September 5, 2006, a probate court magistrate held a hearing on the issue whether appellant's consent was *Page 3 
required in order for the adoption to go forward. Following that hearing, the magistrate issued a decision, including findings of fact and conclusions of law.
 {¶ 5} Among the magistrate's factual findings was a finding that during the year preceding the filing of the adoption petition, appellant was employed and earned between $65,000 and $70,000. The magistrate further found that appellant traveled to Columbus during the one-year period on five weekends to visit with his children. During these visits, the boys stayed with appellant in his hotel room, and appellant paid for the boys' meals and entertainment and bought them gifts. Appellant testified that the average cost of each trip to Columbus was approximately $1,177.26, including airfare, hotel accommodations, rental car, meals, gifts and entertainment for the boys. Appellant testified that he is financially unable to support himself, pay for visits with his sons, and pay child support, and that he was forced to choose between visiting his children and paying child support.
 {¶ 6} The magistrate concluded that appellee had met his burden of proving, by clear and convincing evidence, that appellant failed, unjustifiably, to support his children during the one-year period immediately preceding the filing of the adoption petition. The magistrate stated that there is no evidence that appellant was financially impaired or was unable to pay child support during the relevant time period; the magistrate concluded that appellant simply chose to discontinue supporting his sons.
 {¶ 7} Appellant filed objections to the magistrate's decision, arguing that he provided support for his children during his visits with them, by virtue of the fact that he paid for a hotel room and rental car, meals and entertainment, and purchased gifts for the boys. He also claimed that once in 2005 and once in 2006, he gave personal checks to *Page 4 
R.T., but they were never cashed. However, he presented no evidence that he had in fact tendered these checks and that R.T. had refused to accept them. R.T. testified that she never received any offer of support from appellant, and the only documentation that appellant presented was one notation in his check register. The court noted, however, that appellant had been in R.T.'s presence several times since he allegedly tendered the check noted in his check register, and had never reiterated to her his offer to pay child support. The court also specifically stated that it found appellant's testimony not credible with respect to the alleged tendered payments. (Judgment Entry, 5.) Nonetheless, appellant argued that even if the court determined that he had failed to support his children, this failure was justified by the fact that he could not afford to visit with the children and also pay support on their behalf.
 {¶ 8} Following a hearing on the objections, the probate court overruled them, adopted the magistrate's decision, and entered judgment that appellant failed, without justifiable cause, to support his children during the one-year period preceding the filing of the adoption petition and, therefore, his consent to the adoption is not required.
 {¶ 9} Appellant timely appealed and advances two assignments of error for our review, as follows:
 I. The Trial Court's finding that Petitioner proved by clear and convincing evidence that Appellant did not provide support for his children during the one year preceding the filing of the adoption petition was against the manifest weight of the evidence.
 II. The Trial Court's finding that Petitioner proved by clear and convincing evidence that any failure in support was not justifiable was against the manifest weight of the evidence. *Page 5 
 {¶ 10} Pursuant to R.C. 3107.14(C), the probate court may issue a final decree of adoption if, at the conclusion of a hearing on an adoption petition, the court finds that the required consents have been obtained or excused and that the adoption is in the best interest of the person sought to be adopted. "Thus, an adoption proceeding is a two-step process involving a `consent' phase and a `best-interest' phase." In reAdoption of Jordan (1991), 72 Ohio App.3d 638, 645, 595 N.E.2d 963. Accord In re Adoption of Baby Boy Brooks (2000), 136 Ohio App.3d 824,737 N.E.2d 1062.
 {¶ 11} The "consent" phase involves a determination whether all of the statutorily required consents have been given or are excused. As relevant here, R.C. 3107.06(A) and (B) provide, "[u]nless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by * * *[t]he mother of the minor; [and] [t]he father of the minor, if the minor was conceived or born while the father was married to the mother[.]" Through this statute, when the adoption of a child is proposed, a natural parent has the right to adequate notice and an opportunity to be heard before any existing parental rights are terminated. In re Adoption of Greer (1994), 70 Ohio St.3d 293, 298,638 N.E.2d 999.
 {¶ 12} Under certain circumstances, a natural parent's consent to an adoption of his or her child is not required. R.C. 3107.07 provides, in pertinent part:
 Consent to adoption is not required of * * * [a] parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition * * * *Page 6 
 {¶ 13} Under the foregoing statute, even when the natural parent has maintained regular communication and visitation with the minor child, the parent's failure to support the child without justifiable cause provides an alternative basis for dispensing with the consent requirement. In re Adoption of Jones (Dec. 29, 1983), Franklin App. No. 83AP-748, citing In re Adoption of McDermitt (1980), 63 Ohio St.2d 301,304, 17 O.O.3d 195, 408 N.E.2d 680.
 {¶ 14} When a court dispenses with the requirement for a natural parent's consent, this does not automatically result in the granting of the adoption petition. In re Adoption of Jorgensen (1986),33 Ohio App.3d 207, 209, 515 N.E.2d 622. When a court determines that a parent's consent is not required, it must still make a separate determination that the adoption is in the child's best interest. In re Adoption ofJordan (1991), 72 Ohio App.3d 638, 645, 595 N.E.2d 963, citingJorgensen at 209. This second step is the "best interest" phase. A parent whose consent has been deemed unnecessary is still entitled to notice of the best interest hearing, and "retains an overriding interest in being heard * * * on the issue of whether the proposed adoption would be in the best interest of the child." Jorgensen at 209.
 {¶ 15} The "best interest" phase involves two determinations: "(1) whether the petitioner is suitably qualified to care for and rear the child, and (2) whether the best interests of the child will be promoted by the adoption." State ex rel. Portage Cty. Welfare Dept. v.Summers (1974), 38 Ohio St.2d 144, 67 O.O.2d 151, 311 N.E.2d 6, paragraph four of the syllabus.
 {¶ 16} In the present case, appellant has appealed the probate court's decision in the "consent" phase. Such determinations are final appealable orders, despite the fact *Page 7 
that the probate court has not yet proceeded to the "best interest" phase. In re Adoption of Greer (1994), 70 Ohio St.3d 293,638 N.E.2d 999, paragraph one of the syllabus.
 {¶ 17} In his petition for adoption, appellee alleged that appellant's consent is unnecessary because appellant has failed, without justifiable cause, to provide for the maintenance and support of the minor children for a period of at least one year immediately preceding the filing of the adoption petition.
 {¶ 18} "Pursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, that the natural parent has failed to support the child for the requisite one-year period and that this failure was without justifiable cause."In re Adoption of Masa (1986), 23 Ohio St.3d 163, 23 OBR 330,492 N.E.2d 140, paragraph one of the syllabus. "This higher standard of proof of clear and convincing evidence is required because natural parents have a fundamental liberty interest at stake in maintaining their right to' * * * raise and nurture their children.'" In re Adoption of Shea (July 24, 1990), Franklin App. No. 90AP-245, 1990 Ohio App. LEXIS 3106, at *7, quoting In re Adoption of Schoeppner (1976), 46 Ohio St.2d 21, 24,75 O.O.2d 12, 345 N.E.2d 608.
 {¶ 19} In the case of In re Adoption of Bovett (1987),33 Ohio St.3d 102, 515 N.E.2d 919, the Supreme Court of Ohio held, at paragraph two of the syllabus:
 Once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to support the child for at least the requisite one-year period, the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner. *Page 8 
 {¶ 20} "The question of whether a natural parent's failure to support his or her child has been proven by the petitioner by clear and convincing evidence to have been without justifiable cause is a determination for the probate court, and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." Id. at paragraph four of the syllabus. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. In re Adoption of Breckenridge, Franklin App. No. 03AP-1166, 2004-Ohio-2145, ¶ 10.
 {¶ 21} In appellant's first assignment of error, he argues that the trial court's judgment was against the manifest weight of the evidence insofar as it determined that appellant failed to support his children for the one-year period immediately preceding the filing of the petition for adoption.
 {¶ 22} We begin our analysis by examining the nature of the duty of support and maintenance to which R.C. 3107.07 refers. Ohio has long recognized that a biological parent's duty to support his or her children is a "principle of natural law"[1] that is "fundamental in our society." Aharoni v. Michael (1991), 74 Ohio App.3d 260, 263,598 N.E.2d 1215. Moreover, this duty is not impaired by the termination of the marriage. Pretzinger, supra, at paragraph one of the syllabus.
 {¶ 23} The common-law duty to support one's children has been codified in R.C. 3103.03. Nokes v. Nokes (1976), 47 Ohio St.2d 1, 5, 1 O.O.3d 1,351 N.E.2d 174. That statute provides, "[t]he biological or adoptive parent of a minor child must support the *Page 9 
parent's minor children out of the parent's property or by the parent's labor." R.C. 3103.03(A). Such duty of support is not dependent upon the presence or absence of court orders for support. Nokes, supra, at 5. Rather, a "judicial decree of support simply incorporates the common-law duty of support." In re Adoption of McDermitt (1980), 63 Ohio St.2d 301,305, 17 O.O.3d 195, 408 N.E.2d 680.
 {¶ 24} Chapter 3107 of the Ohio Revised Code does not define the terms "maintenance" or "support." Therefore, we must afford these terms their plain and ordinary meanings. R.C. 1.42; Kimble v. Kimble,97 Ohio St.3d 424, 2002-Ohio-6667, 780 N.E.2d 273, ¶ 6. "Maintenance" has been defined as "[financial support given by one person to another." Black's Law Dictionary (8 Ed. 2004) 973. "Support" has been defined as "[s]ustenance or maintenance; esp., articles such as food and clothing that allow one to live in the degree of comfort to which one is accustomed." Id. at 1480. "Child support" has been defined as "[a] parent's legal obligation to contribute to the economic maintenance and education of a child until the age of majority * * *." Id. at 257.
 {¶ 25} "Generally speaking, the words `support' and `maintenance' are used synonymously to refer to food, clothing and other conveniences, and shelter, including, in some cases, medicines, medical care, * * * education, and reasonable personal care * * *." Id. at 1480-1481, quoting 73 Am.Jur.2d, Support of Persons § 1, at 880-881 (2d ed. 1974). Thus, it is clear that the duty of support and maintenance contemplated by R.C. 3107.07 encompasses all of the minor child's economic necessities and transcends contractual or decretal obligations.
 {¶ 26} Appellant admits that he made no monetary payments to R.T. for the support of his children, pursuant to court order or otherwise, in the one-year period *Page 10 
preceding the filing of the adoption petition. However, in support of his first assignment of error, he argues that he did provide for the maintenance and support of his children by providing meals, hotel rooms, entertainment, and gifts to them during his five visits to Columbus. He argues that these expenditures constitute sufficient provision for the boys' maintenance and support so as to require his consent to their adoption.
 {¶ 27} Therefore, the basis of appellant's argument is the proposition that a natural parent who provides for a child's needs during visitation has provided sufficient support to avoid operation of R.C. 3107.07(A). Indeed, the Third, Fourth, Fifth and Sixth Ohio Appellate Districts have so held. See In re Adoption of Huffman (Aug. 29, 1986), Mercer App. No. 10-85-4; In re Adoption of McNutt (1999), 134 Ohio App.3d 822,732 N.E.2d 470; Gorski v. Myer, Stark App. No. 2005CA00033, 2005-Ohio-2604;In re Adoption of Pinkava (Jan. 13, 1989), Lucas App. No. L-88-034.
 {¶ 28} We note, however, that Huffman, McNutt, Gorski andPinkava are readily distinguished from the instant case. In those three cases the non-consenting parent had exercised regular, weekly or bi-weekly visitation in the parent's home, throughout the relevant one-year period, whereas appellant exercised visitation on only five weekends, or approximately ten days, during the one year preceding the filing of the petition.
 {¶ 29} Moreover, the non-consenting parents in Huffman, McNutt,Gorski and Pinkava not only furnished food, shelter and other necessities during visitation, but purchased such necessary and quotidian items as clothing, diapers or shoes, for the child's use both during visitation and at the custodial parent's home. Here, the vast majority of the monies appellant spent during visitation weekends were for airfare, hotel and rental car charges, none of which directly provide support and maintenance for the *Page 11 
children. Entertainment and meals in restaurants benefit the children only during the visitation, and toys and clothing given as gifts are not a contribution to support when the children are otherwise adequately provided for in that regard.
 {¶ 30} Indeed, this court has held that supplying gifts and other nonessential items is not considered support or maintenance for purposes of R.C. 3107.07(A). In In re Adoption of Strawser (1987),36 Ohio App.3d 232, 522 N.E.2d 1105, we held, "[i]n an action for adoption where it is alleged that the natural father willfully abandoned or failed to care for and support his daughter, his purchase of toys and clothes for her in the value of about $ 133 is insufficient to fulfill his duty of support where the gifts to the child are not requested and they provide her no real value of support because she already has sufficient clothes and toys." Id. at paragraph one of the syllabus.
 {¶ 31} It is undisputed that, other than toys, the only other gifts that appellant gave to either of the boys was a backpack and a bike helmet that appellant gave to the older boy as Christmas gifts in January 2006. But "the purchase of such Christmas gifts is insufficient to fulfill the duty of support where the gifts are not requested and they provide no real value of support and maintenance." In re Adoptionof Breckenridge, Franklin App. No. 03AP-1166, 2004-Ohio-2145, ¶ 12, citing Strawser, supra. Accord In re Adoption of LaValley (July 9, 1999), Montgomery App. No. 17710; In re Adoption of Minich, Trumbull App. No. 2003-T-0010, 2003-Ohio-2817, ¶ 17.
 {¶ 32} It is true that this court has held that there must be a "complete failure to support and maintain during the [relevant] period [and] * * * so long as the parent complies with his duty to support the child for any period during the one year immediately preceding the filing of the petition, then he has not failed to provide support as required by *Page 12 
law, or judicial decree, for one year [and] * * * he will [not] be deemed to have forfeited his parental rights." In re Adoption ofSalisbury (1982), 5 Ohio App.3d 65, 67, 5 OBR 161, 449 N.E.2d 519, quoting In re Adoption of Anthony (1982), 5 Ohio App.3d 60, 62-63,5 OBR 156, 449 N.E.2d 511.[2]
 {¶ 33} However, "contributions which are of no value to the child generally do not qualify as maintenance and support. * * * [W]hen the child possesses sufficient clothes and toys, the natural father's purchase of clothing and toys may not be sufficient to preserve the father's right to prevent an adoption. Nor will gifts to the child qualify as support." (Citations omitted.) McNutt, supra. "The father's duty of support of his minor children extends only to `necessaries.'"In re Adoption of Manley (Dec. 14, 2001), Montgomery App. No. 18946, 2001 Ohio App. LEXIS 5606, at *6. But in the present case, appellant provided only toys and food when the children were already being afforded these, and were being sufficiently supported by R.T. and appellee.
 {¶ 34} Appellant admitted that the only contribution he made toward providing for his children consisted of those sums expended during the exercise of visitation. (Feb. 15, 2007 Tr., 29-30.) He further admitted that the boys were being afforded sufficient maintenance and support by R.T. and appellee. The transcript of the hearing before the magistrate contains the following colloquy between appellant and appellee's counsel:
 MR. ABROMS: So for 14 months you did not pay any child support for those children; is that correct? *Page 13 
 [M.S.]: How did I expect them to live?
 MR. ABROMS: Yes.
 [M.S.]: They were living just fine.
 MR. ABROMS: How do you know that?
 [M.S.]: Because I came up here and saw them quite frequently and talked to them every day.
 MR. ABROMS: I see. So do you know whether somebody who is not obligated to pay for their additional support — Isn't that paying what you should have otherwise be paying?
 [M.S.]: What now?
 MR. ABROMS: [Appellee] — do you know if he was contributing to the support of your children?
 [M.S.]: I would imagine.
 MR. ABROMS: You were not supporting your children, and you expect that somebody other than their father should support them?
 [M.S.]: I expected them to be treated correctly.
(Sept. 5, 2006 Tr., 69-70.) Additionally, R.T. and appellant both testified that R.T. asked appellant to provide health insurance coverage for the boys through his employer-provided health insurance, but he did not do so. He said he chose not to cover the boys "[b]ecause they were covered [by R.T. and appellee]." (Feb. 15, 2007 Tr., 35.) *Page 14 
 {¶ 35} Upon reviewing many of the authorities discussed hereinabove, the Second Ohio Appellate District observed that, on the issue of what constitutes sufficient support and maintenance for a natural parent to retain his or her right to withhold consent to adoption, "[o]ne consistent theme exists throughout all of these cases: meager contributions to a child's support and maintenance have been held to require a parent's consent, but mere gifts and other incidentals have not." In re Adoption of Campbell (Apr. 14, 2000), Montgomery App. No. 18042, 2000 Ohio App. LEXIS 1631, at *6-7. Accord Gorski v. Myer, Stark App. No. 2005CA00033, 2005-Ohio-2604.
 {¶ 36} We recognize the fundamental liberty interest at issue in this case, and do not intend to demean the value of companionship time with one's children, including time spent together enjoying recreational activities. However, this court has held that companionship, affection and parental contact is a "type of support [that] is included within the failure to communicate requirement [in R.C. 3107.07(A)] rather than the requirement of maintenance and support[,] which refers to economic rather than emotional support." In re Adoption of Jones (Dec. 29, 1983), Franklin App. No. 83AP-748, 1983 Ohio App. LEXIS 15403, at *5.
 {¶ 37} Upon review of all of the evidence, the relevant statutes, and the pertinent decisional law, it is this court's determination that the probate court's conclusion that appellant failed to provide his children with maintenance and support as required by law, for the one-year period immediately preceding the filing of the adoption petition, is supported by competent, credible evidence going to all the essential elements of the issue and, as such, is not against the manifest weight of the evidence. Accordingly, we overrule appellant's first assignment of error. *Page 15 
 {¶ 38} In support of his second assignment of error, appellant argues the trial court erred in determining that such failure was without justifiable cause.
 {¶ 39} Appellant argues that appellee failed to meet his burden to prove that appellant's failure was without justifiable cause in light of appellant's assertion that he mailed a check to R.T. in August 2005 that was never cashed or returned. However, as we noted earlier, the trial court specifically noted that it found that appellant's testimony regarding this tendered payment was not credible, and we must defer to that determination. The trial court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony. In re Adoption of Ford,166 Ohio App.3d 161, 2006-Ohio-1889, 849 N.E.2d 330, ¶ 5.
 {¶ 40} In construing adoption statutes the Supreme Court of Ohio has recognized that "[a]ny exception to the requirement of parental consent must be strictly construed so as to protect the right of natural parents to raise and nurture their children." In re Adoption of Schoeppner
(1976), 46 Ohio St.2d 21, 24, 75 O.O.2d 12, 345 N.E.2d 608; see, also,In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 366, 18 OBR 419,481 N.E.2d 613; In re Adoption of Masa (1986), 23 Ohio St.3d 163, 165,23 OBR 330, 492 N.E.2d 140, 142.
 {¶ 41} Under R.C. 3107.07(A), the probate court shall determine the issue of justifiable cause by weighing the evidence of the natural parent's circumstances for the statutory one-year period for which he failed to provide maintenance and support. In re Adoption of Bovett
(1987), 33 Ohio St.3d 102, 105-106, 515 N.E.2d 919. "The probate court must balance the evidence taken as to all the relevant factors in order to determine whether there is clear and convincing evidence before it that the parent failed to support *Page 16 
the child without justifiable cause." In re Adoption of Lay (1986),25 Ohio St.3d 41, 43, 25 OBR 66, 495 N.E.2d 9.
 {¶ 42} "A parent's ability to pay, but failure to do so, is one factor for the probate court to consider." Ibid. Another factor to be considered is the voluntariness or intent underlying a parent's failure to pay child support. Ibid. Where the record reveals that a non-consenting parent was financially capable of supporting his child but failed to do so, the Supreme Court of Ohio has affirmed the trial court's determination that the failure to support was without justifiable cause. See, e.g., Lay, supra; In re Adoption ofMcDermitt (1980), 63 Ohio St.2d 301, 17 O.O.3d 195, 408 N.E.2d 680.
 {¶ 43} The record in the instant case reveals that appellant earned between $65,000 and $70,000 during the one-year period preceding the filing of the adoption petition. The record also reveals that appellant was aware that he was subject to an ongoing child support order, plus a significant arrearage under that order that had been reduced to judgment, yet he failed to make even one payment during the relevant time period, whether or not made specifically pursuant to the court order.
 {¶ 44} Appellant claimed that he was unable to pay for visits and child support and was forced to choose one over the other. Without opining as to whether this alleged dilemma would constitute justifiable cause, we observe that appellant submitted no evidence of his financial liabilities that would support his contention. It may be relevant to the justifiable-cause inquiry whether the non-consenting parent has used his available funds for non-essential items for himself while claiming the inability to provide any support. See In re Adoption of Caleb M.J., Lucas App. No. L-07-1186, 2007-Ohio-5599. Moreover, even if travel-related expenses did reduce his ability to support his children to *Page 17 
some degree, there is no evidence that they reduced his available funds to the extent that he was totally incapable of providing any support whatsoever during the relevant time period.
 {¶ 45} Appellant admitted that he chose not to provide support and maintenance for his children, despite earnings of $65,000 to $70,000 during the relevant period. While willfully failing to pay support, he knew that R.T. and appellee would adequately provide for his children. He admitted that he refused to provide the children health insurance or to pay child support because, essentially, R.T. and appellee were providing these things.
 {¶ 46} On the record before us we find ample competent, credible evidence supporting the trial court's conclusion that appellant's failure to provide maintenance and support for his minor children was unjustified. Accordingly, appellant's second assignment of error is overruled.
 {¶ 47} Having overruled both of appellant's assignments of error, we conclude that the judgment of the Franklin County Court of Common Pleas, Probate Division, is not against the manifest weight of the evidence. Accordingly, we affirm the judgment.
Judgment affirmed.
BRYANT and McGRATH, JJ., concur.
[1] Pretzinger v. Pretzinger (1887), 45 Ohio St. 452, 458,15 N.E. 471.
[2] Contra In re Adoption of Myers (Nov. 20, 2000), Clermont App. No. CA2000-05-032 ("[T]he natural parent must make a recognizable contribution or attempt to contribute to his child's support and maintenance, rather than only a token payment or two."). See, also,In re Adoption of Kilbane (1998), 130 Ohio App.3d 203, 719 N.E.2d 1012;In re Adoption of Wagner (1997), 117 Ohio App.3d 448,690 N.E.2d 959.